**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION**

JARRETT F. JAMISON III,
FORT MARTIN COMMUNITY ASSOCIATION
AND FORKS OF CHEAT FOREST PROPERTY
OWNERS ASSOCIATION,

     **Plaintiffs,**

                                       **CIVIL ACTION NO. 1:07-CV-41**
**v.**                                     **(Judge Keeley)**

LONGVIEW POWER, LLC,

     **Defendant.**

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION TO DISMISS**

This matter is before the Court on defendant's motion to dismiss based on <u>Burford</u> abstention. The plaintiffs characterize their instant suit as a citizen suit under the Clean Air Act ("CAA"), 42 U.S.C. § 7604(a)(3), and assert that the defendant, Longview Power, LLC ("Longview"), does not currently have a valid permit under the Prevention of Significant Deterioration ("PSD") program as defined by the CAA. Therefore, they contend that any action taken by Longview to construct a power plant under the invalid permit violates the CAA.

Although it addresses the substantive issues raised by the plaintiffs' complaint in its motion, Longview contends that the Court need not address them because, under <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315 (1943), it should abstain from exercising jurisdiction

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION TO DISMISS**

over this suit to avoid interfering with the decision of a state agency. Specifically, the Environmental Protection Agency ("EPA") has delegated authority to the State of West Virginia to administer the PSD program through an approved State Implementation Plan ("SIP"). Under the applicable West Virginia SIP, the Director of the West Virginia Division of Air Quality ("DAQ") recognizes Longview's PSD permit as a valid permit. Therefore, to find in favor of the plaintiffs, the Court would have to conclude that the DAQ's permitting decisions were incorrect under the West Virginia SIP.

Although the plaintiffs contend that their claim raises federal issues under the CAA, a careful review of their allegations discloses a claim that is, at bottom, a collateral attack on the DAQ's permitting decisions. Under both Supreme Court and Fourth Circuit precedent discussed below, the Court must abstain from exercising jurisdiction over such a challenge to the decision of a state regulatory agency. The Court, therefore, **GRANTS** Longview's motion to dismiss and **DISMISSES WITHOUT PREJUDICE** the plaintiffs' complaint.

## I. FACTUAL BACKGROUND/PROCEDURAL HISTORY

On March 2, 2004, the DAQ issued a PSD permit to Longview for

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION TO DISMISS**

construction of a power plant. Shortly thereafter, various third parties challenged the DAQ's decision before the West Virginia Air Quality Board ("AQB"). The parties ultimately settled their differences, and the AQB adopted their settlement agreement as a consent order. As a result, the AQB revised Longview's original permit on August 4, 2004. While the permit's issue date remained March 2, 2004, the DAQ later acknowledged that the effective date of Longview's PSD permit was actually August 4, 2004. Within eighteen months of this effective date, on February 1, 2006, the DAQ had received updated Best Available Control Technology ("BACT") information from Longview and granted a twelve-month extension on the deadline to commence construction.[1]

One year later, on February 1, 2007, the plaintiffs asked the DAQ to revoke Longview's PSD permit as invalid because Longview had neither commenced construction nor submitted updated BACT information within eighteen months of the original issue date. In a letter dated February 6, 2007, the director of the DAQ responded that he could not statutorily revoke the permit because Longview

---

[1] W.Va. Code St. R. § 45-14-19.2 requires a holder of a PSD permit to commence construction authorized by the permit within eighteen months of the date of the issuance of the permit. Similarly, W.Va. Code St. R. § 45-14-8.4 requires the permit holder to submit its BACT determination within 18 months of the issuance date.

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION TO DISMISS**

had timely commenced construction within the meaning of the applicable state regulations.

On February 12, 2007, the plaintiffs filed a complaint[2] in this Court challenging the validity of Longview's permit and seeking preliminary and permanent injunctive relief. After the Court held a hearing and denied Longview's motion for bond, the plaintiffs amended their complaint and withdrew their claims for temporary and preliminary injunctive relief. Less than two weeks later, they voluntarily dismissed their complaint.

Then, on March 23, 2007, they filed the instant suit, following which Longview moved to dismiss on April 17, 2007. Following further briefing, Longview's motion is now ripe for review.

## II. LEGAL ANALYSIS

The controlling precedent of both the Supreme Court and Fourth Circuit sets forth specific circumstances under which a federal court must abstain from exercising jurisdiction over a case. Therefore, to resolve the abstention question before it, the Court must examine whether the issue raised by the plaintiffs' complaint involves "a difficult question of state law bearing on policy

---

[2] _Jamison, et al. v. Longview Power, LLC, et al._, Civil Action No. 1:07cv20.

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION TO DISMISS**

problems of substantial public import whose importance transcends the result" in this case, or whether federal court intervention would frustrate the state's interest in effective and consistent application of its regulatory law. <u>New Orleans Pub. Serv. Inc. v. Council of New Orleans</u>, 491 U.S. 350 (1989) ("<u>NOPSI</u>"). The Court must also determine whether West Virginia has a timely and adequate system of administrative and judicial review for the state permitting decisions at issue in this case. <u>Id.</u>

A.

Under <u>Burford v. Sun Oil Co.</u>, a federal court must abstain from exercising jurisdiction over matters that primarily concern issues of state law where timely and adequate state-court review is available. 319 U.S. 315 (1943). In <u>Burford</u>, a district court sitting in equity was asked to rule on the reasonableness of the Texas Railroad Commission's grant of an oil permit. <u>Id.</u> at 331, n. 28. The oil permitting process, however, solely involved issues of Texas law. <u>Id.</u> Therefore, the primary question before the district court was whether the commission had correctly applied Texas's complex oil and gas conservation scheme. <u>Id.</u> Significantly, Texas had a system of administrative and judicial review in place to address these complex issues. <u>Id.</u> at 327, 334. Therefore, in

MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION TO DISMISS

Burford, the Supreme Court held that the federal district court,
unfamiliar with the complex state regulatory scheme, should abstain
and allow the state system to resolve the issue.  Id. at 333-34.

Following Burford, in New Orleans Pub. Serv. Inc. v. Council
of New Orleans, the Supreme Court reversed a district court's
decision to abstain, finding no issue of state law before the
district court.  491 U.S. 350 (1989).  NOSPI, however, set forth
the specific circumstances under which a federal court must abstain
from exercising jurisdiction. Id. at 361.

> Where timely and adequate state-court review
> is available, a federal court sitting in
> equity must decline to interfere with the
> proceedings or orders of state administrative
> agencies: (1) when there are "difficult
> questions of state law bearing on policy
> problems of substantial public import whose
> importance transcends the result in the case
> then at bar"; or (2) where the "exercise of
> federal review of the question in a case and
> in similar cases would be disruptive of state
> efforts to establish a coherent policy with
> respect to a matter of substantial public
> concern."

Id. (emphasis added).

The Fourth Circuit first applied the doctrine of Burford
abstention in Palumbo v. Waste Technologies Indus., 989 F.2d 156
(4th Cir. 1993).  There, the plaintiff challenged the permitting
decisions of the federal and Ohio EPA, approving construction of a

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION TO DISMISS**

hazardous waste incinerator.  In an attempt to establish exclusive

federal jurisdiction, the plaintiff asserted that it had brought a

proper citizen suit under the Resource Conservation and Recovery

Act ("RCRA"), 42 U.S.C. §§ 1691 et seq.  Palumbo, 989 F.2d at 158.

In Palumbo, our circuit court held that the plaintiff's suit

was nothing more than a collateral attack on the federal EPA's

permitting decisions[3].  Id. at 159.  Such an attack was prohibited

by the plain language of the RCRA, 42 U.S.C. § 6976, which

specifically outlined the steps necessary to challenge the

Administrator's actions:

> Review of the Administrator's action ... in issuing,
> denying, modifying, or revoking any permit under section
> 6925 of this title ... may be had by any interested
> person in the Circuit Court of Appeals of the United
> States for the Federal judicial district in which such
> person resides.... Any such application shall be made
> within ninety days from the date of such issuance,
> denial, modification, revocation.... Action of the
> Administrator with respect to which review could have
> been obtained under this subsection shall not be subject
> to judicial review in civil or criminal proceedings for
> enforcement.

Id. at 159 (emphasis added).  Therefore, in Palumbo, the court held

that the plaintiff's citizen suit was not the proper method under

the RCRA to challenge the permitting decisions of the federal EPA.

---

[3] Before Ohio's SIP was approved, the EPA was directly responsible for
issuing permits. Id. at 158

MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION TO DISMISS

Id.

Furthermore, the Ohio SIP, which had been approved by the federal EPA, contained an extensive state administrative and judicial review process[4] that was specifically tailored to Ohio's complex regulatory scheme.  Id. at 160.  Therefore, to the extent that the plaintiffs challenged the permitting decisions of the Ohio EPA, the Fourth Circuit held that Burford required it to abstain because federal court review would disrupt the coherence of and add significant risks and costs to the complex state regulatory scheme. Id. at 159-62.

One year later, in an unpublished decision, the Fourth Circuit provided a detailed abstention analysis in the context of a citizen suit brought under the CAA. Sugarloaf Citizens Ass'n v. Montgomery County, Md., 1994 WL 447442 (4th Cir. 1994).  In Sugarloaf, the court upheld a district court's decision to abstain from hearing a case in which a community environmental organization[5] challenged the decision of the Maryland Department of the Environment ("MDE")

_____

[4] This process began with an initial screening by the Ohio EPA, followed by a review with the Ohio Hazardous Waste Facility Approval Board.  Palumbo, 989 F.2d at 159.  Appeals of the Board's decision were permitted to be heard in a specific state circuit court, with appeals from that decision to be heard by the Ohio Supreme Court. Id.

[5] The organization was created to ensure that a proposed waste-to-energy incinerator facility strictly adhered to state environmental regulations.

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION TO DISMISS**

to grant certain construction and disposal permits to the defendants. <u>Id.</u>

Similar to the instant action, the plaintiffs in <u>Sugarloaf</u> argued that thier claims arose under the citizen suit provision of the CAA, and, therefore, the district court should not have abstained under <u>Burford</u>. <u>Id.</u> at *4. After closely analyzing each of the counts asserted by Sugarloaf in its complaint, however, the Fourth Circuit determined that the plaintiffs' citizen suit merely resurrected objections to decisions of the MDE that had previously been raised in the state's review process. Thus, the plaintiffs' complaint actually asserted a collateral attack on decisions made by the MDE under state regulatory law.

As in <u>Palumbo</u>, the Fourth Circuit reviewed Maryland's extensive regulatory scheme and procedures for administrative and judicial review[6] and found that the permit application system at issue was an "impartial and fair administrative determining subject

---

[6]    In <u>Sugarloaf</u>, Maryland's regulatory scheme started with the permit application itself, which required a number of technical disclosures regarding plans for pollution control technology. 1994 WL 447442 at *3. Before the permit application was accepted, it went through several levels of review. First, a county board undertook the preliminary technical review. Second, public hearings were held and comments were taken. Third, the secretary of the MDE considered all the information and decided whether to issue the permit. Fourth, an administrative law judge or other designated hearing officer took appeals of the secretary's decision. Finally, the state court system had jurisdiction to hear any appeals from the administrative proceeding. <u>Id.</u> at *4.

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION TO DISMISS**

to expeditious and adequate state review" for "important matters of state policy." Id. at *4. Because "[t]he exercise of federal jurisdiction over [Maryland's] permitting decisions would disrupt [its] complex statutory scheme and frustrate the State's effort to establish a coherent environmental policy" in the area of state and local land use, the Fourth Circuit concluded that Burford mandated abstention in that case. Id. at *3-7.

B.

The DAQ's permitting decisions challenged by the plaintiffs in this case involve matters of substantial local concern, specifically air quality and land use in West Virginia. Similar to the environmental issues raised in Sugarloaf and Palumbo, the issue of air quality in West Virginia is an important state policy matter. Moreover, state agencies must balance the competing interests of protecting the environment and fostering economic growth in West Virginia. Significantly, Congress has also recognized that air pollution prevention and control is best regulated by the states, 42 U.S.C. § 7401(a)(3), and, therefore, under Section 7410 of the CAA, the EPA delegates the responsibility for administering the Act to state agencies. Therefore, the questions raised by the plaintiffs are "difficult questions of

state law bearing on policy problems of substantial public import

whose importance transcends the result in" the instant action.

C.

Using the authority delegated to it under the CAA, the State

of West Virginia implemented an SIP[7] in an effort to effectively

and  consistently  regulate  air  quality  for  its  citizens.

Significant to this case, West Virginia implements its PSD program

at W.Va. Code St. R. § 45-14, the purpose of which, pursuant to

W.Va. Code St. R. § 45-14-1, is to ensure that economic growth

occurs in harmony with the  preservation of air resources.  In an

effort to maintain this balance, W.Va. Code St. R. § 45-14-7 sets

forth a comprehensive scheme for issuing PSD permits.  An applicant

must list information regarding the types of emissions that the

facility  will  produce,  as  well  as  the  facility's  potential

environmental impact. Id.

Under West Virginia's permitting process, the DAQ recognizes

Longview's PSD permit as valid.  Specifically, the DAQ states that

the BACT requirement only began tolling on the effective date of

---

[7] Under the CAA, each state must create an SIP and allow its citizens to
voice their challenges to its provisions at public hearings prior to submitting
the plan to the EPA for its approval. 42 U.S.C. § 7410(a)(1).  After the EPA
administrator reviews and approves the proposed SIP, the state must implement and
administer the approved plan. 45 U.S.C. § 7410. The EPA approved West Virginia's
SIP in 1986 and approved its most recent revisions in November, 2006.  40 C.F.R.
§ 52.2528; 71 Fed.Reg. 64470 (Nov. 2, 2006).

MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION TO DISMISS

the revised permit, August 4, 2004, and that Longview had submitted

updated BACT information within eighteen months of that date.  The

plaintiffs, however, assert that Longview's BACT determination

expired eighteen months after the DAQ issued Longview's PSD permit

on March 2, 2004.  They, therefore, contend that Longview has

violated the CAA, 42 U.S.C. § 7604(a)(3)[8], by taking action to

construct a power plant without a valid permit.[9]

Although the plaintiffs strive to characterize their claim as

one arising under the citizen suit provision of the CAA, their

claim is actually a collateral attack on a state agency decision

made under state regulatory law, similar to the claims in Palumbo

and Sugarloaf.  To find that Longview's permit is invalid, the

_____

[8] 42 U.S.C. § 7604(a)(3) states:

> "Except as provided in subsection (b) of this section, any
> person may commence a civil action on his own behalf against
> any person who proposes to construct or constructs any new or
> modified major emitting facility without a permit required
> under part C of subchapter I of this chapter (relating to
> significant deterioration of air quality) or part D of
> subchapter I of this chapter (relating to nonattainment) or
> who is alleged to have violated (if there is evidence that the
> alleged violation has been repeated) or to be in violation of
> any condition of such permit."

[9] In Paragraph 19 of their complaint, the plaintiffs also assert that
Longview's PSD permit is invalid because Longview did not commence construction
within eighteen months of the issuance of its permit.  However, on February 1,
2006, the DAQ extended the commencement deadline for construction by twelve
months.  Therefore, this claim is also a collateral attack on a permitting
decision by the DAQ under the West Virginia SIP.

MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION TO DISMISS

Court would necessarily have to conclude that the DAQ's permitting decision to recognize the amendment date as the effective date of Longview's PSD Permit under the West Virginia SIP was incorrect.[10]

West Virginia cannot be expected to effectively control air pollution if it must contend with a federal district court, not as familiar in state regulatory law, second guessing its decisions under the state's regulatory scheme. Therefore, the exercise of federal jurisdiction over the DAQ's permitting decisions would disrupt West Virginia's comprehensive scheme for issuing permits, and, therefore, "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

D.

Because the plaintiffs' complaint raises issues of state regulatory law, state administrative agencies and state courts are best equipped to review their challenge to the DAQ's permitting decisions. Accordingly, the Court must determine whether the State of West Virginia provides a timely and adequate system of

---

[10] The director of the DAQ has affirmatively refused to revoke Longview's permit. Despite challenging the DAQ's decision, the plaintiffs do not name the DAQ as a defendant in this action. The Court previously questioned whether the DAQ is a necessary party to the plaintiffs' complaint and whether the plaintiffs could assert a claim against the DAQ in a federal district court. However, the Court does not have to resolve those issues in light of its decision to abstain in this matter.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION TO DISMISS

administrative and judicial review for their challenge.[11]

Pursuant to 42 U.S.C. § 7410(a), the EPA delegated the responsibility of administering the CAA to the State of West Virginia. Air pollution prevention and control, therefore, is now regulated by the West Virginia DAQ. Under the authority granted by § 7410(a), West Virginia has established a timely and adequate system of judicial and administrative review for the DAQ's permitting decisions.

After the DAQ makes a decision on whether a permit should be issued, any interested party can appeal that decision to the West Virginia AQB. W.Va. Code § 22-5-14. W.Va. Code. St. R. § 52-1 sets forth specific procedural rules for appeals made to the AQB. Furthermore, if a party submits an appeal to the AQB and is unsatisfied with its decision, he may appeal that decision in a state circuit court. W. Va. Code, §§ 22B-1-7; 22B-1-9. As a final judicial remedy, the West Virginia Supreme Court of Appeals also has jurisdiction to hear appeals from a circuit court. Id.

Considered as a whole, the review process implemented by the

---

[11] The Court finds the cases cited by the plaintiffs to be unpersuasive. US v. Morros, 268 F.3d 695 (9th Cir. 2001) and US v. Cargill, 508 F.Supp. 734 (D.C. Del. 1981) are both cases initiated by a federal government agency against a state agency because of a dispute over the latter's interpretation of a federal law. This is patently distinguishable from the instant action where a group of private plaintiffs are challenging the decision of a state agency interpreting state law.

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION TO DISMISS**

state is fair and impartial. Challenges to the DAQ's and AQB's administrative decisions may ultimately be brought in the state court system, which is better equipped to fairly decide important matters of local policy. Because West Virginia has clearly implemented the kind of timely and adequate system of review that <u>Burford</u> contemplated, the Court must abstain in this matter.

## V. CONCLUSION

The specific circumstances that, in <u>NOPSI</u>, the Supreme Court held require abstention are clearly present in this matter. Initially, power generation facilities like Longview's can contribute to the growth of the local economy as well as to the degradation of the local environment. Thus, any challenge to the DAQ's permitting decisions transcends the result in this case because it directly affects land use and the overall air quality in West Virginia. <u>NOSPI</u>, 491 U.S. at 361. Furthermore, this Court's review of the DAQ's permitting decisions would interfere with the state's interest in consistently and effectively using its complex permitting scheme to control air pollution in West Virginia. <u>Id.</u> Moreover, West Virginia has a timely and adequate system of administrative and judicial review to consider any challenges to its permitting process. <u>Id.</u> The plaintiffs, thus, had the

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION TO DISMISS**

opportunity to subject the DAQ's permitting decision to not only administrative but also judicial review at the state level.

In conclusion, the Court must abstain from deciding the issue raised by the plaintiffs' complaint. Accordingly, it **GRANTS** Longview's motion to dismiss (dkt no. 7) and **DISMISSES WITHOUT PREJUDICE** the plaintiffs' complaint.

It is so **ORDERED**.

The Clerk of the Court is directed to transmit copies of this Order to counsel of record for the parties.

DATED June 27, 2007.

                                    /s/ Irene M. Keeley
                                    IRENE M. KEELEY
                                    UNITED STATES DISTRICT JUDGE